1  BRIAN J. STRETCH (CABN 163973)
   United States Attorney

2  BARBARA J. VALLIERE (DCBN 439353)
3  Chief, Criminal Division

4  CHRISTINA McCALL (CABN 234139)
   Assistant United States Attorney
5      1301 Clay Street, Suite 340S
       Oakland, California 94612
6      Telephone: (510) 637-3680
       christina.mccall@usdoj.gov
7

8  Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | ) Case No. 4-16-71424 MAG |
|---|---|
| Plaintiff, | ) [PROPOSED] DETENTION ORDER |
| v. | ) |
| MARCIAL AGUIRRE, | ) Hearing: December 2 & 16, 2016<br>) Time: 9:30 A.M.<br>) Court: Hon. Kandis A. Westmore |
| Defendant. | ) |

Defendant Marcial Aguirre is charged in a seven-count indictment with: conspiracy to distribute or possess with intent to distribute 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; conspiracy to distribute or possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846; possession with the intent to distribute 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A); and possession with the intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B). If convicted of any of the counts involving more than 50 grams of actual methamphetamine, Aguirre faces a mandatory minimum sentence of 10 years in prison, and a statutory maximum sentence of life. If convicted of any of the counts involving more than 500 grams of cocaine, Aguirre faces a statutory maximum sentence of 40 years for each count, and a minimum sentence of five years.

Following arrest in this district, at the initial appearance, the United States moved for Aguirre's detention, pursuant to 18 U.S.C. §§ 3142(f). There is a presumption of detention because this case involves an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act, pursuant to 18 U.S.C. §§ 3142(e)(3)(A).

At the detention hearing on December 2, and also at the identity hearing on December 16, several of Aguirre's family members were present.

The government argued that the serious charges and strong evidence provide an incentive for Aguirre not to make future court dates. The government asserted that Aguirre would not be eligible for "safety valve" relief from a mandatory minimum sentence, due to his alleged role as an organizer or leader of the narcotics distribution conspiracy.

The government summarized some of Aguirre's conduct in the case, and proffered that Aguirre used multiple couriers who drove vehicles with hidden compartments containing significant amounts of methamphetamine and cocaine from California to Oregon. The government provided information about an incident on July 7, 2016, when Aguirre and co-defendant Victoria Jones were driving to Oregon in tandem, calling one another. Police stopped the car Jones was driving and found about five pounds of cocaine and about one pound of methamphetamine in a hidden compartment behind the rear seat.

The government provided information about an incident on July 29, 2016, when Aguirre and co-defendant Sylviane O'Neill were driving to Oregon in tandem, in different cars, calling one another. Police stopped the car O'Neill was driving and found approximately 25 pounds of methamphetamine and five pounds of cocaine in a hidden compartment. The government proffered that there were numerous calls between Aguirre's mobile phone and a particular Mexican phone number around the time that he and O'Neill were driving to Oregon. At the identity hearing on December 16, 2016, a Detective with Oregon State Police testified that he personally observed O'Neill in Oregon on July 29, and saw a Nissan car registered to Aguirre driving in Oregon that day. Detective DelGrecco confirmed the seizure of the approximately 25 pounds of methamphetamine and five pounds of cocaine from a hidden compartment in the vehicle O'Neill was driving on July 29.

The government also proffered information about the seizure of significant quantities of methamphetamine in the Bakersfield area on September 13, 2016. The government indicated there was

[PROPOSED] DETENTION ORDER
4-16-71424 MAG                                    2

telephone contact between Aguirre and co-defendant Susan Cordelia Brown leading up to the seizure. A state search warrant was executed on a Toyota Camry that Brown was driving and officers retrieved over 40 pounds of methamphetamine hidden behind the rear seat. Another state search warrant for the Bakersfield-area "stash house" revealed about 30 pounds of methamphetamine.

The government also proffered information about the seizure of over $74,000 in cash from a rental van occupied by Aguirre and co-defendant Cecilia Gonzalez. That seizure took place in Oregon in late September, 2016. Following the December 2 hearing, the government submitted a written clarification, indicating the van was rented in Gonzalez's name. The government proffered that surveillance revealed that Aguirre was switching vehicles and coordinating with other people prior to the seizure of the cash from a hidden location in the rental van. At the identity hearing on December 16, Detective DelGrecco testified that he observed (with the aid of binoculars) Aguirre involved with two vans with California plates in the same parking lot and observed Aguirre doing something in the back of the rental van for several minutes, and emerge looking sweaty and nervous. Detective DelGrecco also testified about observing another State Trooper interacting with Aguirre and Gonzalez outside the van, and testified about watching a video recording of the encounter that led to the seizure of substantial amounts of currency from a hidden compartment inside the rental van.

Government counsel argued that Aguirre's ties to Mexico, Mexican citizenship and frequent travel to Mexico made him a significant risk of non-appearance at further court proceedings. Aguirre reported that six of his seven siblings live in Mexico. The prosecutor emphasized that Aguirre told the Pretrial Services officer he does not have a passport and has traveled to Mexico on an annual basis to visit his parents since 1985 or 1986, and approximately bi-annually since his parents passed away, with his last travel in 2015. Government counsel read a long list of dates (provided by the Department of Homeland Security) when Aguirre re-entered the United States at various ports of entry (including Andrade and San Luis) in recent years—a history of travel which did not match Aguirre's self-report to Pretrial Services. Defense counsel responded that a permanent resident does not need a passport to return to the United States; a "green card" is sufficient to enter the country lawfully. Defense counsel stated that he understood Aguirre's response to the Pretrial Services officer to address how often he traveled to Mexico to visit family—not all of his travel to Mexico.

Defense counsel argued that the conditions recommended by the Pretrial Services (which did not emphasize the nature and circumstances of the offense or consider the weight of the evidence in the case) would be sufficient to meet the requirements of the Bail Reform Act.  Defense counsel "categorically denie[d]" all the government's proffered evidence, and suggested, without any support, that the prosecutor had been provided with misinformation.  Defense counsel proffered that Aguirre has operated a landscaping business for 13 years, and that he personally has delivered checks from landscaping customers written to the business account to Aguirre.  Defense counsel emphasized Aguirre's lack of convictions in the past 14 years.  Defense counsel argued that the conditions suggested by Pretrial Services, which included the posting of Aguirre's stepdaughters' (who were present in court and noted that Aguirre had acted as their father since the ages of 8 and 11) home, would be sufficient to secure his release.

The Court finds that Aguirre poses a substantial risk of non-appearance at court proceedings, that cannot be mitigated by conditions of release—and that Aguirre has not overcome the presumption of detention in this case involving a substantial quantity of methamphetamine and cocaine.  The nature and circumstances of the offense, as proffered by the government, weigh heavily in favor of detention.  The Court is concerned about Aguirre's alleged significant involvement in a drug trafficking organization as a supplier or organizer or leader.

Additionally, the evidence proffered is strong, which also favors detention (although not the most important factor in the Court's analysis).  The Court notes that Detective DelGrecco's testimony and the surveillance photos submitted as exhibits at the identity hearing were aligned with the government's proffer about the seizure of a significant amount of currency from the rental van occupied by Aguirre and Gonzalez in late September.  Detective DelGrecco's testimony was also aligned with the government's proffer about the seizure of significant quantities of methamphetamine and cocaine from the car driven by O'Neill on July 29, 2016.  The Court is concerned that Aguirre's extensive travel to Mexico (and apparently incomplete information provided to Pretrial Services about that travel) indicates a serious risk of flight, and no passport is required for Aguirre to travel to Mexico.  The Court finds that the government has met its burden to show that Aguirre should be detained as a risk of non-appearance

[PROPOSED] DETENTION ORDER
4-16-71424 MAG                           4

1  at future court proceedings.  The Court finds that a property bond, and the other conditions
2  recommended by defense counsel are not sufficient to overcome this risk.

### ORDER

Aguirre is ordered detained as no condition or combination of conditions in 18 U.S.C. § 3142(c) will reasonably assure the appearance of Aguirre and safety of the community as required.

Aguirre is committed to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal.  See 18 U.S.C. § 3142(i)(2).  Aguirre must be afforded a reasonable opportunity to consult privately with counsel.  See 18 U.S.C. § 3142(i)(3).  On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility must deliver Aguirre to the United States Marshal for a court appearance.  See 18 U.S.C. § 3142(i)(4).

IT IS SO ORDERED.

DATED: 1/3/17

_Kandis Westmore_
HON. KANDIS A. WESTMORE
United States Magistrate Judge